IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| WESTERN WATERSHEDS PROJECT, CENTER FOR BIOLOGICAL DIVERSITY, and WILDEARTH GUARDIANS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE,<br><br>Defendant. | Case No. 4:CV 10-229-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
|---|---|

## INTRODUCTION

The Court has before it motions to intervene filed by Utah, Wyoming, and a group of trade organizations conducting activities within the habitat of the sage grouse. The motions are fully briefed and at issue. For the reasons expressed below, the Court will grant the motions and allow the applicants to intervene as of right under Rule 24(a)(2).

## LITIGATION BACKGROUND

In 2007, the Court ruled that the decision of the U.S. Fish and Wildlife Service (USFWS) that the listing of the sage grouse was "not warranted" under the ESA was arbitrary and capricious. On remand, the USFWS spent about two years reevaluating its listing decision. In 2010, the agency concluded that the listing was "warranted, but precluded by higher priority listing actions." *See 75 Fed. Reg. 13910 (March 23, 2010).* The USFWS went on to state that "[w]e will develop a proposed rule to list the greater

**Memorandum Decision & Order - 1**

sage grouse as our priorities allow." *Id*.

In reaching this conclusion, the USFWS reasoned that (1) it cannot, by law, spend more than Congress appropriates, (2) it has about $11 million to spend on listing actions for all species, (3) this limited fund requires the agency to assign priority numbers to each listed species depending on the magnitude and immediacy of risks, and (4) there are a large number of species with priority numbers higher than the sage grouse, meaning that these other species must receive attention first. *Id*. To be entitled to make a "warranted but precluded" finding, an agency must also demonstrate that it is making "expeditious progress" in clearing the backlog that warrants the finding – the USFWS made this finding by pointing to the actions it completed in 2010 on different listed species. *Id*.

WWP filed this lawsuit to challenge the "precluded" portion of the USFWS's "warranted but precluded" decision.[1] Specifically, WWP claims that (1) the law forbids the USFWS from refusing to proceed with a listing due to a lack of resources, (2) the USFWS failed to estimate the cost of a sage grouse listing, (3) the USFWS has already done most of the work for a listing and so the cost would not be great, (4) the agency has received an increase in funding lately, not reflected in this decision, (5) the agency has used improper criteria to ignore its own priority listings in the past, and (6) the agency is not making expeditious progress on the backlog and hence has no right under the law to

---

[1] There are currently three plaintiffs, but for ease of reference, the Court will collectively refer to them as "WWP." Two of the plaintiffs plan to settle with the USFWS and eventually withdraw from this action leaving WWP as the only plaintiff.

**Memorandum Decision & Order - 2**

make a "warranted but precluded" decision.

These factors, WWP argues, warrant a finding that the "precluded" portion of the USFWS's decision was arbitrary and capricious. WWP seeks to remand the case to the USFWS to "promptly publish a proposed listing rule for the greater sage grouse and/or the two distinct population segments on a court-ordered deadline." *See Amended Complaint (Dkt. 8) at p. 29.*

Seeking to intervene in this litigation are Wyoming, Utah, and a group of nonprofit trade organizations, whose members include farmers and ranchers who are directly dependent on grazing to earn a living. For ease of reference, the Court will collectively refer to these trade organizations by the name of one of their members, the Idaho Cattle Association (ICA).

Wyoming seeks intervention because sage grouse habitat covers roughly two-thirds of the State. Between one-third to one-half of the total sage grouse population is found in Wyoming. A listing would affect mineral, oil, and gas development over 42 million acres, and also affect recreational activities. Wyoming also points to the extensive conservation efforts and resources that it has dedicated to the recovery of the sage grouse. *See [Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 817 (9th Cir. 2001)](#)* (holding that in evaluating motion to intervene, court must "take all well-pleaded, non-conclusory allegations . . . as true absent sham, frivolity or other objections").

Utah has a smaller but still significant population of sage grouse. In 2008, the Utah Legislature appropriated $2 million for sage grouse conservation actions, and 11 separate

Local Working Groups are currently engaged in sage grouse studies in 15 different locations. Utah estimates that it has spent over $16 million on sage grouse habitat improvement projects.

ICA members graze cattle and conduct other activities in sage grouse territory. For many of them, these activities constitute their livelihood. If the sage grouse is listed, ICA members may be forced to adopt expensive mitigation measures and could be barred altogether from conducting their activities in certain areas.

On the basis of these interests, the applicants seek intervention as of right and permissive intervention. WWP resists intervention for all purposes but agrees that the applicants can intervene as to remedies only.

## LEGAL STANDARD

Rule 24(a) contains the standards for intervention as of right, and it states in pertinent part as follows:

> Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Circuit has distilled this provision into a four-part test: (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter,

impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Berg, 268 F.3d at 817*.

In general, the Court must construe Rule 24(a) liberally in favor of potential intervenors. *Id*. at 818. Moreover, the Court's evaluation is "guided primarily by practical considerations," not technical distinctions. *Id.* However, "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents, 587 F.3d 947, 950 (9th Cir .2009)*.

## ANALYSIS

There is no contention that the applications are untimely. To resolve the second and third factors – whether the applicants may suffer, as a result of this lawsuit, an impairment of a "significantly protectable" interest – the Court must follow "practical and equitable considerations and construe the Rule broadly in favor of proposed intervenors." *Wilderness Society v. U.S. Forest Service, 630 F.3d 1173, 1179 (9th Cir. 2011)* (citations omitted). A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* (citations omitted).

Here, if WWP is granted the relief it requests, the case will be remanded to the USFWS to draft listing rules that will take the sage grouse out of its current *de facto* unprotected status and clothe it with all the protections of an unconditionally listed species. That will have a substantial effect on ICA members who may have to undertake

mitigation measures or cease certain activities. It may also require states with sage grouse populations – like Utah and Wyoming – to modify or extend their conservation efforts.

WWP accurately points out that the effects will not be felt immediately because there is a public comment period during which all the applicants can offer input. But WWP has acknowledged in this lawsuit that the USFWS has already done most of the work for listing, and so the process should not be bogged down by delays. Moreover, WWP is asking the Court to set a deadline for those rules, which will hurry their impact further. The Court's inquiry is a "practical" one, *id.,* and as a practical matter, jumping the sage grouse to the front of the priority line will significantly speed up the effects of listing that may impair the interests of the applicants. That is sufficient to satisfy the second and third elements.

The fourth element requires the Court to consider whether the interests of the applicants may be adequately represented by the USFWS. In resolving this issue, the Court must consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Berg,* 268 F.3d at 822. The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. *Id.* However, the burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Id.* In assessing the adequacy of

**Memorandum Decision & Order - 6**

representation, the focus should be on the "subject of the action," not just the particular issues before the court at the time of the motion.  *Id.*

Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies.  *Freedom From Religion Foundation, Inc. v. Geithner*, 2011 WL 1746137 (9th Cir. May 9, 2011).  Such presumption can be rebutted only by "a compelling showing to the contrary."  *Id*.

On one level, the applicants and the USFWS share an objective:  Both seek to affirm the "precluded" portion of the USFWS's decision.  But they diverge on their "ultimate objective," which is the test the Court must apply.  The ultimate objective of the applicants is to prevent, or at least delay as long as possible, the effects of listing; the USFWS simply seeks confirmation of its administrative process.  Because they do not share the same ultimate objective, no presumption arises of adequate representation.  The applicants need only make a "minimal" showing, as discussed above, that the representation of their interests by the USFWS "may be" inadequate.

For some claims in this lawsuit, the applicants cannot even make that minimal showing.  WWP claims that the USFWS's findings on its own budget are wrong and that the agency has underestimated its appropriations.  WWP also takes the agency to task for failing to estimate the cost of drafting listing rules for the sage grouse.  These claims focus on the internal workings of the USFWS, and the applicants identify no unique insights they have into these issues.

However, WWP's amended complaint also contains a broad challenge to the

Memorandum Decision & Order - 7

priority settings that the USFWS gave to the sage grouse, an important component of the "precluded" portion of the agency's decision. More specifically, WWP's amended complaint alleges that the USFWS's "precluded" decision was arbitrary in part because the sage grouse should be accorded a higher priority by the agency due to past agency delays and the "further decline[] of the species. *See Amended Complaint (Dkt. 8)* at p. 19, ¶¶ F & G. The priority assigned by the agency depends in part on the immediacy and magnitude of the threats to the species. *See 75 Fed. Reg. 13910 (March 23, 2010).* This is an issue – unlike the inner workings of the USFWS – about which the applicants may have special knowledge. As discussed above, the Court must take as true for the purpose of resolving these motions the allegations of the applicants that they have long experience with the lands under their stewardship. Of course, the Court is bound by an administrative record, and generally, with some exceptions, cannot rely on matters known by the applicants outside that record. But the applicants could alert the USFWS to key facts in the record on the priority issues that the USFWS might otherwise overlook.

The applicants need only make a "minimal" showing on inadequacy. They have made that showing. The discussion above shows that they meet all the requirements for intervention as of right, and the Court will accordingly grant their motions.

While the Court is granting intervention as of right, the Court is concerned about the "piling-on" effect of adding three opponents to join the USFWS against WWP. The Court will require counsel for the intervenors to take special efforts to ensure that their briefing and arguments are not redundant with those of the USFWS, and that page

limitations are not bypassed through the splitting up of arguments.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions to intervene (docket nos. 9, 23, and 31) are GRANTED pursuant to Rule 24(a)(2).

DATED: **July 9, 2011**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 9**